NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RENEE P. COSTELLO,<br><br>                Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | Civil Action No.:  20-15540<br><br>**OPINION** |

**CECCHI, District Judge.**

**I.   INTRODUCTION**

Before the Court is Plaintiff Renee Costello's appeal seeking review of a final decision by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act ("SSA" or the "Act").  This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

**II.   BACKGROUND**

Plaintiff is a 60-year-old female who suffers from a left foot fracture and nerve damage, plantar fasciitis, right knee problems, depression, and anxiety. Tr.[1] at 20, 23.  She has a twelfth-grade education and previously worked as a cashier and customer service clerk. *Id.* at 23.  Records indicate that Plaintiff injured her foot in 2011 and that she subsequently underwent physical therapy. *Id.* at 20.  She was apparently cleared to return to work in November 2011. *Id.* at 22.

---

[1] "Tr." refers to the certified record of the administrative proceedings. ECF No. 5.

1

However, Plaintiff stopped working in 2012, allegedly because of her mental conditions and difficulty standing. *Id.* at 20.

On March 13, 2018, Plaintiff applied for DIB, alleging disability beginning February 1, 2014. *Id.* at 15.  Plaintiff's claim was denied initially on May 14, 2018, and upon reconsideration on August 8, 2018. *Id.*  Plaintiff thereafter requested a hearing, which was held before the ALJ on September 24, 2019. *Id.*  Following the hearing, on October 16, 2019, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 12–28.  Plaintiff requested review of the decision, and the Appeals Council denied the request on September 23, 2020. *Id.* at 1–6.  On November 4, 2020, Plaintiff initiated this action. ECF No. 1.

### III. LEGAL STANDARD

#### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3).  The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g).  Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted).  Substantial evidence is more than a mere scintilla and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citations omitted).  If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-1676,

2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

    **B.**    **Determining Disability**

In order to be eligible for benefits under the SSA, a plaintiff must show she is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the plaintiff's age, education, and work experience, disability will be evaluated by the plaintiff's ability to engage in her previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for SSA purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

### C.      Sequential Evaluation Process

The Social Security Administration follows a five-step, sequential evaluation to determine whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the plaintiff is currently engaged in substantial gainful activity. *Sykes*, 228 F.3d at 262.  Second, if she is not, the ALJ determines whether the plaintiff has an impairment that limits her ability to work. *Id.*  Third, if she has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  If it is, this results in a presumption of disability. *Id.*  If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains despite her impairment. *Id.* at 263.  Fourth, the ALJ must consider whether the plaintiff's RFC is enough to perform her past relevant work. *Id.*  Fifth, if her RFC is not enough, the ALJ must determine whether there is other work in the national economy the plaintiff can perform. *Id.*

The evaluation continues through each step unless it is determined at any point the plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The plaintiff bears the burden of proof at steps one through four, upon which the burden shifts to the Commissioner at step five. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

### IV.     DISCUSSION

### A.      Summary of the ALJ's Decision

At step one, the ALJ determined that Plaintiff did not engage in any substantial gainful activity between February 1, 2014, her alleged onset date, and December 31, 2017, her date last insured. Tr. at 17.  At step two, the ALJ found that Plaintiff had the following severe impairments: tarsal tunnel syndrome, plantar fasciitis, peripheral neuropathy, major joint dysfunction,

anxiety/panic disorder, and major depressive disorder. *Id.* At step three, the ALJ determined that Plaintiff's impairments, whether considered alone or in combination, did not meet or medically equal the severity of one of the impairments in the Listings. *Id.* at 18. Because the ALJ found that Plaintiff's impairments did not meet such severity, the ALJ then determined Plaintiff's RFC. *Id.* at 19. Based on all the evidence in the record, the ALJ found that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c), except being mentally limited to performing tasks without strict production pace and having only occasional interaction with the general public. *Id.* At step four, however, the ALJ found that Plaintiff was unable to perform her past relevant work because "the mental/social demands of [Plaintiff]'s past relevant work exceed her [RFC]." *Id.* at 23. Finally, at step five, the ALJ determined, based on the vocational expert's testimony at the administrative hearing on September 24, 2019, that there were jobs in significant numbers in the national economy that Plaintiff could perform, given her age, education, work experience, and RFC. *Id.* at 24.[2] Thus, the ALJ concluded that Plaintiff was not disabled under the SSA during the period February 1, 2014 through December 31, 2017. *Id.* at 25.

### B. Plaintiff's Arguments on Appeal

Plaintiff's arguments on the instant appeal concern the ALJ's determination that Plaintiff had the RFC to perform a full range of medium work, except being mentally limited to performing tasks without strict production pace and having only occasional interaction with the general public. First, Plaintiff argues that the medical evidence in the record does not support the ALJ's finding that Plaintiff had the physical RFC to perform medium work, and instead supports a finding that Plaintiff is capable of no more than sedentary work. ECF No. 9 ("Pl. Br.") at 13–15. Second,

---

[2] Specifically, the vocational expert testified that Plaintiff could work as a dining room attendant, linen room attendant, and industrial cleaner, which are classified as "medium work." Tr. at 24.

5

Plaintiff argues that the ALJ's mental RFC assessment was flawed because the ALJ failed to properly weigh the opinion of Plaintiff's treating physician, Ajazali Nanjiani, M.D. *Id.* at 16–20. Third, Plaintiff argues that the ALJ failed to properly consider Plaintiff's pain and subjective complaints. *Id.* at 20–23. The Court will consider each argument in turn.

### 1.   Assessment of Plaintiff's Physical RFC

First, Plaintiff challenges the ALJ's RFC determination as it relates to Plaintiff's physical abilities. *Id.* at 13–15. As noted above, the ALJ found that Plaintiff had the RFC to perform medium work, which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). Plaintiff argues that her severe impairments related to her left foot should preclude all but sedentary work.

Here, the ALJ found that Plaintiff's severe impairments did not meet or equal any of the impairments in the Listings. Tr. at 18–19. Plaintiff focuses on the ALJ's determination as to the effect of those impairments on Plaintiff's RFC "based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). After considering such evidence, the ALJ determined that Plaintiff was capable of medium work. Tr. at 19. The ALJ also supported her medium work RFC finding with substantial evidence. For one, the ALJ found that Plaintiff's medical records did not reveal any functional limitations that would preclude medium work. *Id.* at 20–21. Rather, as the ALJ explained, the records indicated that Plaintiff injured her foot in 2011 (prior to her alleged onset date of February 1, 2014) and underwent physical therapy which improved her functioning and helped to alleviate her symptoms. *Id.* at 20. Indeed, as the ALJ discussed, treatment notes from Plaintiff's podiatrist, Yelena Dreyzina, M.D., indicated that Plaintiff was cleared to return to work in November 2011, three years before her alleged onset date. *Id.* at 22. As to the relevant period (February 1, 2014 through December 31, 2017), it should

6

be noted, as Defendant argues, that Plaintiff failed to submit any evidence of treatment for her alleged physical impairments.[3] ECF No. 10 at 10.  It appears that after Plaintiff was cleared to return to work in November 2011, there are no records of any medical treatment for physical impairments for nearly seven years.  The ALJ considered Plaintiff's treatment records thereafter— from 2018 and 2019 (after her alleged period of disability), which indicated normal muscle strength and tone and normal gait and station. Tr. at 20–21.  Thus, the ALJ thoroughly considered the medical evidence pertaining to Plaintiff's foot impairments and resulting limitations. *See Mickie v. Comm'r of Soc. Sec.*, 785 F. App'x 51, 53 (3d Cir. 2019) (affirming the ALJ's finding that a claimant with a severe back impairment was able to perform medium work based on a normal physical examination and the record as a whole, noting the low threshold for substantial evidence).  Plaintiff cites no evidence suggesting that the RFC inaccurately reflected her physical abilities.  And Plaintiff has provided no support for her argument that a finding of a severe physical impairment necessarily precludes a medium work RFC finding.

Accordingly, substantial evidence supports the ALJ's physical RFC determination that Plaintiff was capable of medium work.

### 2.     Assessment of Plaintiff's Mental RFC

Second, Plaintiff challenges the ALJ's mental RFC determination.  Plaintiff argues that the ALJ's RFC assessment, which includes only two mental limitations,[4] did not sufficiently account for Plaintiff's mental health impairments. Pl. Br. at 16–20.  Specifically, Plaintiff argues that the

---

[3] The Court notes that the ALJ's decision contains a typographical error where the ALJ referred to "exams in 2014," but cited to examinations from 2018. Tr. at 20 (citing *id.* at 251–56).  This does not alter the Court's decision.

[4] As noted above, the ALJ determined that Plaintiff had the capacity to perform medium work, except being mentally limited to performing tasks without strict production pace and having only occasional interaction with the general public. Tr. at 19.

7

ALJ erred in weighing the opinion of Plaintiff's treating physician, Ajazali Nanjiani, M.D. *Id.*

When analyzing a medical opinion, the SSA regulations[5] provide a framework for the ALJ to determine the persuasiveness of that opinion based on the following factors: (1) supportability (*i.e.*, whether the medical opinion is supported by objective medical evidence); (2) consistency (*i.e.*, whether the medical opinion is consistent with other medical and nonmedical sources in the record); (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c); *see also David K.*, 2022 WL 225451, at *6. When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency.[6] *Id.* §§ 404.1520c(a), 416.920c(a). The ALJ must articulate her consideration of the medical opinion evidence, including how persuasive she finds the medical opinions in the case record. *Id.* §§ 404.1520c(b), 416.920c(b). Specifically, the ALJ

---

[5] In its brief, Plaintiff cites to caselaw that applies the "treating physician rule," Pl. Br. at 17, which required the ALJ to give controlling weight to a treating source's opinion, so long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence" in the record." 20 C.F.R. § 416.927(c)(2). However, the regulations relating to the evaluation of medical evidence were amended for disability claims filed after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01, at *5844 (Jan. 18, 2017); *see also David K. v. Kijakazi*, No. 20-12419, 2022 WL 225451, at *6 (D.N.J. Jan. 26, 2022). Because Plaintiff's claim was filed on March 13, 2018, the new regulations, codified at 20 C.F.R. §§ 404.1520c and 416.920c, apply.

[6] With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

must explain how she considered the "supportability" and "consistency" factors for a medical source's opinion. *Id.* The ALJ may—but is not required to—explain how she considered the remaining factors. *Id.*

Here, the ALJ, after detailing evidence relating to Plaintiff's mental impairments (Tr. at 21–22), specifically considered Dr. Nanjiani's opinion that Plaintiff had serious, work-preclusive mental limitations but found that opinion to be unpersuasive (*id.* at 22). Notably, the ALJ explicitly articulated the supportability and consistency factors as they related to Dr. Nanjiani's opinion. Addressing the supportability factor, the ALJ noted that Dr. Nanjiani's treatment notes lacked any objective findings that suggested "more than mild to moderate symptomology." *Id.*; *see also id.* at 23 (noting the lack of any "significant evidence of ongoing problems with cognitive function, memory, attention, and concentration" in Dr. Nanjiani's treatment notes). Addressing the consistency factor, the ALJ noted that Dr. Nanjiani's opinion was not consistent with other medical evidence in the record, which "showed good control with medications" and that Plaintiff "was not overly limited in her activities of daily living." *Id.* at 22. Thus, the ALJ properly considered the persuasiveness of Dr. Nanjiani's opinion in accordance with the applicable regulations. *See* 20 C.F.R. § 404.1520c(c)(1)–(2); *see also David K.*, 2022 WL 225451, at *6–9 (finding that substantial evidence supported the ALJ's reasons for discounting a physician's opinion under the new regulations where the ALJ determined that the opinion was not supported by the physician's underlying treatment notes and the claimant's activity level). Accordingly, substantial evidence supports the ALJ's decision to discount Dr. Nanjiani's opinion.

### 3. Evaluation of Plaintiff's Subjective Complaints

Finally, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's subjective complaints of pain. Pl. Br. at 20–23. The Regulations provide a two-step framework for

9

evaluations of a claimant's subjective complaints. *See* 20 C.F.R. § 404.1529; *see also* SSR 16-3p, 2017 WL 5180304, at *2 (October 25, 2017). At step one, the ALJ must determine whether there is an underlying medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms. 20 C.F.R. § 404.1529. If a medically determinable impairment is found, the ALJ proceeds to step two. *Id.* At step two, the ALJ must evaluate the "intensity, persistence, and limiting effects" of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. *Id.* The ALJ may discredit the claimant's statements as to the "intensity, persistence, and limiting effects" of their symptoms if they are not supported by objective medical evidence and other evidence. *Id.*

Here, the ALJ properly followed the two-step process as required by the Regulations. *See* Tr. at 20–23. At step one, the ALJ determined that Plaintiff had medically determinable impairments that could reasonably be expected to cause the alleged symptoms. *Id.* at 20. However, at step two, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record." *Id.* The ALJ then explained her decision to afford less weight to Plaintiff's statements of disabling symptoms by pointing to specific objective medical and nonmedical evidence as required by 20 C.F.R. § 404.1529(c). The evidence cited by the ALJ in support of her determination that Plaintiff's statements were not entirely credible included: Plaintiff's relatively normal physical and neurological exams; consistently normal gait and ability to ambulate independently; mental health treatment records showing mild/moderate symptomology, routine treatment, and significant improvement with medications; normal cognitive function, memory, attention, and concentration; and ability to perform daily activities such as doing housework, preparing meals, driving occasionally, reading, spending time with

others, and attending church. Tr. at 22–23.  Therefore, substantial evidence supports the ALJ's analysis of Plaintiff's subjective complaints. *See Carolyn C. v. Kijakazi*, No. 20-3544, 2021 WL 4932785, at *10–12 (D.N.J. Oct. 22, 2021) (finding that substantial evidence supported the ALJ's decision to discount the claimant's subjective complaints where the ALJ explained how the record evidence, including the claimant's conservative treatment and daily activities, undermined the severity of her allegations).

Accordingly, the Court concludes that substantial evidence supports the ALJ's RFC determination and consideration of Plaintiff's subjective complaints.

## V.     <u>CONCLUSION</u>

For the reasons above, the ALJ's decision is affirmed.  An appropriate Order will follow.

**DATE:** March 17, 2022

*s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**
